**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MATTHEW WILLIAM PATNESKY, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PX-19-230 |
| WARDEN, | * | |
| Respondent. | * | |
| | *** | |

**MEMORANDUM OPINION**

On January 24, 2019, while incarcerated in the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"), Matthew William Patnesky filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging a Federal Bureau of Prisons ("BOP") disciplinary action and the loss of good conduct credits. ECF No. 1. By supplement filed on February 7, 2019, Patnesky challenged a subsequent and separate disciplinary action. ECF No. 5. As relief, he seeks expungement of sanctions related to both incidents as well as restoration of adverse custody classification points and good conduct credits. ECF No. 1, 5.

On April 23, 2019, Respondent filed a Motion to Dismiss the Petition, or in the alternative, Motion for Summary Judgment, which the Court construed as an Answer. ECF Nos. 22, 26. Patnesky replied. ECF No. 25. Having reviewed the pleadings, the Court finds that a hearing is not necessary. *See* D. Md. Local R. 105.6 (D. Md. 2018). For the following reasons, the Petition will be DENIED.

**I. Background**

Patnesky is a federal inmate currently serving a 132-month sentence for a Mann Act violation under 18 U.S.C. § 2422(B). *See* Public Information Inmate Data, ECF No. 22-2. His projected release date is May 25, 2023, with credit for good conduct. *Id.*

Patnesky's claims in this petition arise from two separate disciplinary incidents that took place at FCI Cumberland. First, Patnesky challenges the discipline he received arising from an encounter with a unit officer on August 10, 2018. On that day, the unit officer visited Patnesky's cell and observed a towel covering the cell window. Inside, the officer found Patnesky unresponsive, sitting on the toilet in his cell. *See* DHO Report No. 3153798 at 3, ECF No. 22-3. Patnesky claims he was only sleeping. ECF No. 1. When the officer tried to rouse Patnesky, he began mumbling. *Id.* Patnesky then reached into his shorts and, disobeying the officer's commands to stop moving, threw a small object into the toilet and flushed. *Id.* Patnesky was charged with destroying or disposing of any item during a search or attempted search. *Id.* at 2. At a hearing on August 20, 2018, the Disciplinary Hearing Officer (DHO) decided that Patnesky had committed the prohibited act. *Id.* at 4. As a sanction, Patnesky lost 41 days of good conduct time, 15 days of disciplinary segregation, and 180 days loss of commissary and email privileges. *Id.* The written DHO Report was issued on January 29, 2019 and provided to Patnesky on February 6, 2019.[1] *Id.*

The second disciplinary incident took place on January 11, 2019. ECF No. 5. According to the DHO Report regarding that incident, a BOP unit officer responded to a duress alarm in Patnesky's cell and found him disoriented and slurring his speech. DHO Report No. 3212286 at 3, ECF No. 22-4. Patnesky then told the unit officer that he was high from something he had just smoked, and he gave the officer a small black square of paper from his secured locker. *Id.* Following the procedures set forth in BOP Program Statement 6060.08, "Urine Surveillance and

---

[1] In his Petition, Patnesky originally alleged that he was unable to exhaust his administrative remedies for the August 2018 incident because the BOP did not provide him with the DHO Report. *See* ECF No. 1 at 2-3; Supplement at 2, ECF No. 5; Supplement at 2-4, ECF No. 15. Because the BOP has since provided the Report, this claim is now moot. *See United States v. Hardy*, 545 F. 3d 280, 283 (4th Cir. 2008) ("when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," a case is deemed moot) (citation omitted).

Narcotic Identification," the paper was field tested using a test kit available to the BOP onsite. *Id.* The paper tested positive for opium alkaloids and heroin, respectively, and Patnesky was charged with possession of narcotics. *Id.* at 2-3. While his DHO hearing was pending, Patnesky was placed in disciplinary segregation. *See* Inmate History, ECF No. 22-5. At the DHO hearing on March 1, 2019, the DHO officer found that Patnesky committed the prohibited act of possession of narcotics. ECF No. 22-4 at 2-4. The DHO sanctioned Patnesky with 41 days disallowance of good conduct time, seven days of disciplinary segregation, 30 days of disciplinary segregation (suspended pending 180 days clear conduct), and 270 days loss of commissary and phone privileges. *Id.* at 4. The DHO also determined the sanctions were to run consecutively to the previous sanctions. *Id.* The written DHO Report for this incident was issued on March 8, 2019 and provided to Patnesky on March 12, 2019. *Id.* at 5.

Patnesky filed the Petition before the Court on January 24, 2019, claiming that "some evidence" did not exist to support his first disciplinary conviction because no drugs were recovered and he was not given a drug test. ECF No. 1. He seeks expungement of the August 2018 incident report and sanctions, including adverse custody classification points, and to have his good conduct time restored. *Id.*

On February 7, 2019, Patnesky supplemented his Petition to include the second disciplinary determination, contending it was arbitrary and discriminatory, and that he is innocent of narcotics possession. ECF No. 5. Patnesky seeks expungement of the charge and sanctions and as well as a declaration that the BOP process of adjudicating possession charges is unconstitutional. *Id.*

On March 25, 2019, Patnesky was transferred from FCI Cumberland. *See* ECF No. 22-5.

**II.     Discussion**

**A.        August 2018 Disciplinary Action**

A prisoner facing the possible loss of good conduct credits as a sanction for prison misconduct is entitled to certain due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id*. at 540, 564, 570-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

As to the first challenged disciplinary action, Patnesky received notification of the charges against him, was granted a hearing and the right to present evidence, and was given a written decision. *See generally* ECF No. 22-3. Further, ample evidence supported the DHO's determination, as detailed in the DHO Report. ECF No. 22-3 at 3. The DHO Officer relied on the eye-witness testimony of the unit officer, and concluded that Patnesky's claims of having fallen asleep to be "insufficient." *Id.* The DHO also relied upon a health services nurse who concluded at the time of the incident that Patnesky "was under the influence of an illicit substance" and possibly had overdosed. *Id.* at 8-9. Thus, contrary to Patnesky's assertion, "some evidence" in the record supports the DHO's determination.[2]

---

[2] Although Patnesky is correct that the DHO referred to a different prohibited act, "assaulting any person, code 224" at the end of the Report, the reference appears to be a mistake when considering that the correct charge appears throughout the DHO Report. *See* ECF No. 22-3 at 2-4. Thus, Patnesky's claim that the DHO relied upon erroneous information or evidence is without merit. *See* ECF No. 12.

**B. January 2019 Disciplinary Action**

With regard to Patnesky's January 2019 disciplinary infraction, Patnesky contends due process was lacking because (1) the test results had not been independently verified by an outside laboratory as is done for other types of violators; (2) the kind of violation charged automatically resulted in segregation and discipline without laboratory results, and contrary to the process for other similar types of infractions; and (3) BOP destroyed the evidence preventing Patnesky the opportunity to test the results himself and so he was unconstitutionally deprived of the right to defend against the charge. ECF No. 5.

This claim fails as well. Patnesky was provided written notice of his charges and a copy of the incident report; he participated in a hearing where he was granted an opportunity to call witnesses and present documentary evidence on his behal; and the hearing was conducted by an impartial decision-maker who was not involved in the incident. *See generally* ECF No. 22-4.

Moreover, ample evidence supported the DHO's decision. *Id.* at 3-4. Patnesky was found in his cell disoriented and slurring his speech. *Id.* He admitted at the time that he was high from something he just smoked and gave the unit officer a small black square of paper and said "this is what I was smoking." *Id.* The paper tested positive for opium alkaloids and heroin.[3] *Id.*

The DHO also considered Patnesky's statements made at the hearing and in writing. *Id.* at 3-4, 12-15. Patnesky did not dispute that when the unit officer asked him what he had smoked, he replied by reaching into his locker and grabbing the first piece of paper "knowing it wouldn't test for anything." *Id.* The DHO further considered Patnesky's clinical encounter with BOP health services immediately following the incident, at which time he was assessed to be "under the

---

[3] Contrary to Patnesky's allegation that the BOP destroyed all evidence, ECF No. 5 at 2, the DHO Report reflects that the unit officer stated that the remainder of the square paper had been used to complete the drug testing procedure, ECF No. 22-4 at 3, which is consistent with the BOP's written guidelines for performing such tests. *See* BOP Program Statement 6060.08.

influence of an unknown substance." *Id.* at 10-11. On this record, the Court agrees with Respondent that more than "some evidence" support the DHO's finding that Patnesky committed the prohibited act of drug possession.

As for Patnesky's claim that BOP's failure to use an outside drug lab deprived him of due process, the contention is without legal support. ECF No. 5 at 1. Prisoners are not afforded "the unfettered right to call any witness or present any evidence they wish regardless of its relevance or necessity." *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002); *see also Seggara v. McDade* 706 F.2d 1301 (4th Cir. 1983). "In a prison disciplinary hearing, prison officials generally are entitled to rely on institutional test results, absent any evidence of unreliability or irregularity in conducting the tests." *Johnson v. Mill*, Civil Action No. GJH-16-871, 2017 WL 4063776, at *6 (D. Md. Sept. 12, 2017) (citing *Terry v. Dep't of Pub. Safety & Corr. Servs.*, Civil Action No. ELH-11-1686, 2012 WL 2564779, at *8 (D. Md. June 29, 2012) (recognizing that a single drug test's results constituted "some evidence" to support prison disciplinary conviction)). Presented with a positive test result on which prison officials were entitled to rely, the Court is satisfied that Patnesky was not deprived of due process.

As for his equal protection claim, Patnesky must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). The claim fails as a matter of law, however, if an inmate offers no evidence to support that he is treated differently than other similarly situated inmates or that differential treatment is intentional. *See Middleton v. Zych*, 2012 WL 4742777 at *2 (W.D. Va. Oct. 4, 2012), *aff'd*, 514 F. App'x 401 (4th Cir. 2013) (inmate made no showing that he was similarly situated and alleged no facts supporting the conclusion that the outcome of his hearing differed from the hearing of the

other inmate because of intentional, purposeful discrimination).

The equal protection challenge centers on the divergent testing methods the BOP uses to prove drug possession as compared to use charges. ECF No. 5 at 1; *see* BOP Program Statement 5270.09, Inmate Discipline Program, p. 45 (Table 1) (emphasis added). The former charge can only be proven by a urinalysis test "performed exclusively by a Central Office-approved laboratory." BOP Program Statement 6060.08, Urine Surveillance and Narcotic Identification, p. 5. No "field test" akin to that used in Patnesky's charge exists for urinalysis at the BOP; they are all performed by an outside lab. However, this difference exists because urinalysis testing on-site is not an option to support a use charge. In this respect, inmates facing possession charges are not similarly situated to those facing use charges. Thus, the equal protection clam cannot survive on this liability theory.

Patnesky lastly challenges the propriety of being placed automatically in segregation following the January 2019 incident. Although a habeas petitioner may challenge the fact or length of his confinement, he may not bring a § 2241 petition challenging the conditions of confinement. *Manuel v. Stewart*, No. DKC-13-2043, 2014 WL 4094788, at n. 2 (D. Md. Aug. 18, 2014) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973); *Muhammad v. Close*, 540 U.S. 749, 750 (2004)). This is so because even if Patnesky could show that his placement in segregation somehow violated his constitutional rights, the violation would have no effect on his release date. Thus, his claim is not cognizable in this respect.

### III.    Conclusion

For the foregoing reasons, the Court will deny the Petition. A separate Order follows.

|  |  |
|---|---|
| 4/30/2020 | /S/ |
| Date | Paula Xinis<br>United States District Judge |